UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT A. BAUER,                                                    **DECISION**
                                    Plaintiff,                          **and**
                    v.                                                 **ORDER**

ANDREW M. SAUL,[1] Commissioner of                         **19-CV-00288F**
Social Security,                                                    (**consent**)
                                    Defendant.
_____

APPEARANCES:           LAW OFFICES OF KENNETH R. HILLER, PLLC
                       Attorneys for Plaintiff
                       KENNETH R. HILLER, and
                       JUSTIN DAVID JONES, of Counsel
                       6000 North Bailey Avenue
                       Suite 1A
                       Amherst, New York 14226

                       JAMES P. KENNEDY, JR.
                       UNITED STATES ATTORNEY, and
                       RICHARD W. PRUETT
                       Special Assistant United States Attorney
                       Attorney for Defendant
                       Federal Centre
                       138 Delaware Avenue
                       Buffalo, New York 14202, and

                       AVNI DINESH GANDHI
                       Social Security Administration
                       Office of General Counsel
                       61 Forsythe Street, S.W.
                       Suite 20T45
                       Atlanta, Georgia 30303, and

                       REBECCA HOPE ESTELLE
                       Social Security Administration
                       Office of General Counsel
                       24 Federal Plaza
                       Room 3904
                       New York, New York 10278

_____

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On April 7, 2020, this matter was assigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. No. 12).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on September 19, 2019 (Dkt. No. 8), and by Defendant on November 18, 2019 (Dkt. No. 10).

## BACKGROUND

Plaintiff Robert Bauer ("Plaintiff"), brings this action under the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on February 10, 2015, for Social Security Disability Insurance ("SSDI") under Title II of the Act ("disability benefits").  Plaintiff alleges he became disabled on September 13, 2014, based on rheumatoid arthritis of the back and shoulders, asthma, and high blood pressure.  (R. 512).[2]  Plaintiff's application initially was denied on June 17, 2015 (R. 416), and at Plaintiff's timely request, on August 7, 2017, a hearing was held in Jamestown, New York before Administrative Law Judge Lynette Gohr ("the ALJ").  (R. 362-402) ("administrative hearing").  Appearing and testifying at the hearing were Plaintiff, represented by Timothy M. Lodge, Esq. ("Lodge"), and vocational expert Jay A. Steinbrenner ("the VE").

On August 3, 2017, Plaintiff's counsel requested the ALJ issue a subpoena to Danilo Saldana, M.D. ("Dr. Saldana"), for Plaintiff's treatment records pursuant to 20

---

[2] References to "R" are to the page of the administrative record electronically filed by Defendant on July 22, 2019 (Dkt. No. 5).

C.F.R. §§ 404.1512 and 405.331.  (R. 658).  During Plaintiff's administrative hearing on

August 7, 2017, the ALJ denied Plaintiff's subpoena request for records from Dr.

Saldana, because Plaintiff's late submittal violated the five-day-rule[3] (R. 365-66), and on

October 24, 2017, issued a decision denying Plaintiff's claim (R. 21-34) ("ALJ's

Decision").  Plaintiff submitted supplemental records to the Appeals Council that

included 69 pages of medical records from Southtowns Family Practice ("Southtowns"),

from January 16, 2015 to May 1, 2017, and three pages of a magnetic resonance

imaging ("MRI") scan completed on April 30, 2018.  On January 7, 2019, the Appeals

Council determined that Plaintiff's supplemental records from Southtowns had no

reasonable probability of changing the outcome of the ALJ's decision, that Plaintiff's

supplemental MRI scan was unrelated to Plaintiff's period of disability, and denied

Plaintiff's request for review rendering the ALJ's Decision the Commissioner's final

decision.  (R. 4-5).  On March 5, 2019, Plaintiff commenced the instant action seeking

review of the ALJ's Decision.  (Dkt. No. 1).

On September 19, 2019, Plaintiff moved for judgment on the pleadings seeking

remand to obtain Dr. Saldana's treatment records and further consideration by the ALJ

(Dkt. No. 8) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of

Plaintiff's Motion for Judgment on the Administrative Record (Dkt. No. 8-1) ("Plaintiff's

Memorandum").  On November 18, 2019, Defendant moved for judgment on the

pleadings (Dkt. No. 10) ("Defendant's Motion"), attaching Commissioner's Brief in

Response Pursuant to Local Civil Rule 5.5 for Social Security Cases (Dkt. No. 10-1)

---

[3] The ALJ found that Plaintiff's letter requesting that the ALJ subpoena records from Dr. Saldana's office violated the five-day rule under 20 C.F.R. § 404.1512, and failed to meet any of the exceptions necessary to excuse Plaintiff's late request for a subpoena outside of the 10-day notice requirement.  *See* 20 C.F.R. § 404. 935(b).  (R. 369).

("Defendant's Memorandum").  Filed on December 9, 2019, were Plaintiff's Reply

Arguments (Dkt. No. 11) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is GRANTED; Defendant's Motion is

DENIED.

## **FACTS**[4]

Plaintiff Robert Bauer ("Plaintiff" or "Bauer"), born July 13, 1975, was 42 years

old as of Plaintiff's administrative hearing on August 7, 2017, married, lived with his

grandfather, had an 18 month-old child, completed eighth grade in school, and had not

completed any type of specialized job training, trade, or vocational school.  Plaintiff

describes his daily activities as preparing meals, vacuuming, grocery shopping,

socializing with friends, mowing the lawn, taking daily walks, watching television, and

attending doctor's appointments.  (R. 367-76).

Plaintiff, with past relevant work as a warehouse worker and loader operator,

alleges that he is unable to work because he has difficulty lifting more than 10 pounds,

walking more than 15 minutes, sitting more than a half an hour at a time, standing more

than five minutes, and grasping with his right hand.  (R. 370, 387).  In connection with

Plaintiff's alleged impairments, on November 25, 2014, Plaintiff underwent a medical

checkup at Southtowns with Craig K. MacLean, D.O. ("Dr. MacLean"), and reported

lower back pain radiating to Plaintiff's abdomen and lower left leg pain.  (R. 626).  Upon

examination, Dr. MacLean noted that Plaintiff was severely obese, recommended that

Plaintiff engage in a low-fat high fiber diet, and prescribed Cymbalta to treat Plaintiff's

depression.  (R. 625-27).  On January 16, 2015, Dr. MacLean completed a follow-up

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

related to Plaintiff's depression, and noted that Plaintiff reported considerable improvement while taking Cymbalta.  (R. 630-32).

On June 3, 2015, in connection with his disability benefits application, Plaintiff underwent a consultative psychiatric evaluation by psychologist Susan Santarpia, Ph.D., ("Dr. Santarpia"), who noted that Plaintiff reported cooking, cleaning, doing laundry, shopping, socializing with family and friends, watching television, taking walks, and evaluated Plaintiff with the ability to follow and understand simple directions, perform simple tasks independently, maintain concentration and attention, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress.  (R. 645-46).

On June 3, 2015, Samuel Balderman, M.D. ("Dr. Balderman"), completed a consultative internal medical examination on Plaintiff who reported a history of hypertension, asthma, cervical, lumbar, and shoulder pain.  (R. 651).  Upon examination, Dr. Balderman evaluated Plaintiff with a normal gait, inability to walk on his heels and toes, normal stance, full range of motion of the elbows, forearms, wrists, hips, knees, ankles, left shoulder, cervical spine, limited lumbar range of motion, stable and non-tender joints, upper and lower extremity strength, hand and finger dexterity, mild limitations to reaching, pushing, pulling from shoulder pain, and moderate limitations to prolonged standing, sitting, bending and lifting.  (R. 653-54).

On February 3, 3017, Plaintiff sought treatment from Michael S. Weingarten, M.D. ("Dr. Weingarten"), at Rheumatology Consultants of W.N.Y., P.C., where Dr. Weingarten completed a consultative rheumatological examination on Plaintiff, noted that Plaintiff reported pain and stiffness in all of Plaintiff's joints, swelling in Plaintiff's

hands, wrists, knees and feet, that Dr. Saldana diagnosed Plaintiff's rheumatoid arthritis based on blood tests and X-rays, and that Plaintiff received his first injection of Humira(arthritis) one week prior with worsening symptoms.  Dr. Weingarten further noted that although Plaintiff had some symptoms suggesting rheumatoid arthritis, Plaintiff's presentation was atypical as Plaintiff had not responded well to Dr. Saldana's prescribed Humira or prednisone treatment, that Plaintiff's underlying depression and OSA linked to chronic widespread joint and muscle pain suggested a possible diagnosis of fibromyalgia, and that Dr. Weingarten was at a disadvantage without serology and X-ray reports from Dr. Saldana's office, which Dr. Weingarten requested.  (R. 334-35).

On May 5, 2017, Dr. Weingarten noted that Plaintiff remained significantly symptomatic while exhibiting no active signs of rheumatoid arthritis upon examination, discontinued Plaintiff's prednisone and Humira prescriptions as those treatment regimens, previously prescribed by Dr. Saldana, were not effective in treating Plaintiff's symptoms, re-filled Plaintiff's hydrocodone medication (pain), and requested records from Dr. Saldana's office.  (R. 337).  Dr. Weingarten noted a suspected diagnosis of arthralgia based on degenerative changes and myofascial pain, severe obesity, chronic pain, ordered bilateral X-rays of Plaintiff's feet, wrists, hands, lumbar spine, a rheumatoid factor blood test, referred Plaintiff to a pain management specialist, and scheduled a follow-up examination with Plaintiff within three months.  (R. 338).  Dr. Weingarten noted the records from Dr. Saldana's office had not been received and forwarded Dr. Saldana's office a second record request.  (R. 338).

## DISCUSSION

### 1.    Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

2.      **Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20

C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, or if the defendant fails to meet its burden at the fifth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, the ALJ found Plaintiff has not engaged in substantial gainful activity ("SGA") since September 13, 2014, Plaintiff's alleged disability onset date, and suffers from the severe impairments of asthma, rheumatoid arthritis,[6] degenerative disc disease of the lumbar spine, obesity, and medically determinable impairments of hypertension, depression and OSA (R. 27), which do not cause more than a minimal

---

[6] While the ALJ found that Plaintiff has the severe impairment of rheumatoid arthritis, the record, absent Dr. Saldana's records concerning Plaintiff's diagnosis and treatment, does not support or contradict such a finding.

limitation of Plaintiff's ability to perform basic work activities and are therefore non-severe,[7] and that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 28.  Despite his impairments, the ALJ found Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), with limitations to standing and walking for approximately five hours and sitting for three hours in an eight-hour workday, occasionally lifting 20 pounds, frequent reaching with the upper extremities in all directions, and occasional stooping, kneeling, crouching, and crawling.  (R. 29).  The ALJ further determined that Plaintiff was unable to perform Plaintiff's past relevant work as a warehouse worker and loader operator (R. 31), and upon eliciting testimony from VE Brown based on Plaintiff's age, education, and RFC, in accordance with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"), found Plaintiff was able to perform other work existing in significant numbers in the national economy as a stock checker, private sector mail room clerk, injection molding, and bench worker.  (R. 33).  Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act.  *Id.* at 34.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis but argues that the ALJ's refusal to subpoena Plaintiff's medical records from Dr. Saldana's office created a gap in the record.[8]  Plaintiff's Memorandum at 10-20.  Defendant maintains that the ALJ properly rejected Plaintiff's request to subpoena records from Dr. Saldana, as such request  was not submitted within 10 days

---

[7] "An impairment is not severe if it does not significantly limit [a claimant's] physical or mental abilities to do basic work activities."  20 C.F.R. § 404.1521(a) (bracketed text added).

[8] Plaintiff alleges no error results from the Appeals Council's decision not to exhibit supplemental records related to Plaintiff's April 30, 2018 MRI.  The undersigned, therefore, does not discuss the issue.

before Plaintiff's administrative hearing, and that Plaintiff was unable to meet an exception for Plaintiff's late request for a subpoena under C.F.R. § 404.950(d) ("§ 404.950(d)").  Defendant's Memorandum at 15-18.  In reply, Plaintiff reiterates that although Plaintiff's request for the ALJ to issue a subpoena was outside of the 10 day period before Plaintiff's administrative hearing, Plaintiff's excuse for failing to submit timely records to the ALJ before the hearing qualifies as an exception to the 10-day rule under 20 C.F.R. § 404.935(b)(3)(iv) ("§ 404.935(b)(3)(iv)"), as Plaintiff actively and diligently attempted to secure medical records from Dr. Saldana.  Plaintiff's Reply at 1-6. Defendant's arguments are without merit.

With regard to the ALJ's decision not to issue a subpoena for medical records from Dr. Saldana's office (R. 24), such records pertain to Dr. Saldana's treatment of Plaintiff from 2013 until Plaintiff changed his rheumatology care to Dr. Weingarten in 2017 for insurance reasons.  As Plaintiff's treating physician for over four years, Dr. Saldana's treatment records were therefore germain to the ALJ's consideration.

Section 20 C.F.R. § 404.950(d)(1) ("§ 404.950(d)(1)") of the Act, permits ALJs to issue subpoenas for records where "reasonably necessary for the <u>full</u> presentation of a case."  *See* § 404.950(d)(1) (underlining added).  Parties to a hearing who wish to subpoena documents must file a written request to the ALJ at least 10-days before the administrative hearing that includes the name(s) and address(es) of the witnesses or documents to be produced, facts that the documents are expected to prove, sufficient reasons why the facts could not be proven or obtained without issuance of a subpoena, 20 C.F.R. § 404.950(d)(2), and if the request is not made within the 10 day period, meet one of the exceptions under 20 C.F.R. § 404.935(b)

("§ 404.935(b)") that include:

> 1) Our action misled you; or
> 2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
> 3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about submitting the evidence earlier. Examples include, but are not limited to:
>> (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
>> (ii) There was a death or serious illness in your immediate family;
>> (iii) Important records were destroyed or damaged by fire or other accidental cause; or
>> (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

20 C.F.R. § 404.935(b)(1-3).  ("§ 404.935(b)(1-3)").

In this case, the ALJ erred by rejecting Plaintiff's request to subpoena medical records

from Dr. Saldana's office.

During Plaintiff's administrative hearing on August 7, 2017, the ALJ noted

Plaintiff's correspondence of August 3, 2017, wherein Plaintiff requested the ALJ issue a

subpoena to Dr. Saldana's office for the Plaintiff's medical records:

ALJ: Any objection to the relevancy of any of the documents contained in the file?

ATTY: No objection, your honor.

ALJ: I'll note that I did – a letter was submitted, dated [August 3, 2017] regarding

records from Dr. Saldana [sic].  We do have a requirement that I must be apprised of

outstanding records five business days prior to this hearing.  Clearly, the letter was not

provided timely.  Well, do you wish to be hearing [sic] on that issue at all, Mr. Lodge?

ATTY: No, you honor, you know, there was not [INAUDIBLE] about that or any of the

reasons why it was not submitted in that timeframe, your honor, unfortunately.

ALJ: Given the fact that I was not apprised five days prior and there's no indication of any exceptions that would apply, I'm going to preclude the records from Dr. Saldana.

CLMT: What does that mean?

ATTY: It just means that these records that already have [INAUDIBLE] is the only reason.

CLMT: They're not going to accept them?

ALJ: I admit into evidence –

ATTY: Yeah.

(R. 365-66).

Relevant to Plaintiff's correspondence on August 3, 2017, requesting the ALJ issue a subpoena for records from Dr. Saldana's office, Plaintiff's then attorney of record, Michael Reese, Esq., specifically noted that "[d]espite our efforts, unusual, unexpected, and unavoidable circumstances beyond our control have prevented us from obtaining and submitting medical evidence from Dr. Danilo Saldana 993 Delaware Ave[sic] Buffalo New York 14209" (R. 658), and attached documentation denoting counsel's previous requests for Dr. Saldana's records on July 17, 2017, July 18, 2017, July 24, 2017, July 25, 2017, and July 26, 2017 (R. 660), thus meeting the criteria for an exception under § 404.935(b)(3)(iv) (applicant "actively and diligently sought evidence . . . not received . . . ."), and excusing Plaintiff's failure to request the subpoena within 10 days of Plaintiff's administrative hearing.

ALJs have an affirmative obligation to develop the administrative record, *Perez v. Chater,* 77 F.3d 41, 57 (2d Cir. 1996), investigate and develop the arguments and facts both for and against the granting of disability benefits, *Butts v, Barnhart,* 388 F.3d 377,

386 (2d Cir. 2004), even where, as here, a plaintiff is represented by counsel.  *See*

*Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009).  In this case, it is undisputed Dr.

Saldana provided medical treatment for Plaintiff during the four-year period between

2013 and 2017, when Plaintiff transferred his rheumatology care to Dr. Weingarten for

insurance reasons thus rendering Dr. Saldana's treatment and apparent diagnosis of

Plaintiff's rheumatoid arthritis condition highly pertinent to the merits of Plaintiff's claim.

(R. 330-31).

On February 3, 2017, Dr. Weingarten completed a consultative rheumatological

examination on Plaintiff, noted that Plaintiff reported pain and stiffness in all of Plaintiff's

joints, swelling in Plaintiff's hands, wrists, knees and feet, that Dr. Saldana diagnosed

Plaintiff's rheumatoid arthritis based on Plaintiff's blood tests and X-rays, and that

Plaintiff received his first injection of Humira(arthritis) one week before Plaintiff's

examination with Dr. Weingarten with worsening symptoms.  Dr. Weingarten noted that

although Plaintiff had some symptoms suggesting rheumatoid arthritis, Plaintiff's

presentation was atypical as Plaintiff had not responded well to Dr. Saldana's

prescribed Humira or prednisone treatment, that Plaintiff's underlying depression and

OSA with chronic widespread joint and muscle pain suggested a possible diagnosis of

fibromyalgia, and that Dr. Weingarten was at a disadvantage in fully assessing Plaintiff's

condition without supporting serology or X-rays from Dr. Saldana's office, which Dr.

Weingarten had then requested.  (R. 334-35).

On May 5, 2017, Dr. Weingarten noted that Plaintiff remained significantly

symptomatic while exhibiting no active signs of rheumatoid arthritis upon examination,

discontinued Plaintiff's prednisone and Humira prescriptions as those treatment

regimens, previously prescribed by Dr. Saldana, were not effective in treating Plaintiff's pain swelling and immobility, re-filled Plaintiff's hydrocodone medication (pain), and again requested records from Dr. Saldana's office.  (R. 337).  Dr. Weingarten noted that he suspected a diagnosis of arthralgia (neuralgic pain in the joints) based on Plaintiff's degenerative changes, myofascial pain, severe obesity, chronic pain, ordered bilateral X-rays of Plaintiff's feet, wrists, hands and lumbar spine, a rheumatoid factor blood test, referred Plaintiff to a pain management specialist, and scheduled a follow-up examination with Plaintiff within three months.  (R. 338)[9].  Dr. Weingarten noted that the records from Dr. Saldana's office had not been received and forwarded Dr. Saldana's office a second record request.  (R. 338).  Plaintiff's counsel requested, prior to the hearing, records from Dr. Saldana's office on at least five occasions and telephoned Dr. Saldana's office on July 25, 2017, in an effort to obtain the records.  (R. 660).  Under the circumstances here, Plaintiff's then treating rheumatologist Dr. Weingarten provided treatment to Plaintiff on only two occasions, attempted unsuccessfully to obtain underlying diagnostic treatment records from Dr. Saldana's office to obtain underlying test records to substantiate Dr. Weingarten's diagnosis of Plaintiff, never questioned Plaintiff's reported pain, swelling and immobility, Plaintiff's counsel, like Dr. Weingarten prior to the hearing, was also unsuccessful in obtaining Dr. Saldana's records on at least five occasions, and Plaintiff expressed concern during Plaintiff's administrative hearing over the ALJ's refusal to subpoena Dr. Saldana's records, the ALJ cannot be found to have made "every reasonable effort" to complete the record.  *See* 20 C.F.R. § 416.912(d) ("§ 416.912(d)").  The ALJ's refusal to exercise her power to subpoena the

---

[9] The record does not indicate whether the results of Plaintiff's rheumatoid factor blood test were received by Dr. Weingarten and, if received, Dr. Weingarten's evaluation of the results.

missing records from Dr. Saldana therefore results in the ALJ's failure to fulfill her duty to complete the record, and a decision unsupported by substantial evidence contrary to § 416.912(d).  *See Harris* o/b/o *N.L.K. v. Berryhill,* 293 F.Supp. 3d 365, 369 (W.D.N.Y. 2018) (ALJ's refusal to subpoena relevant missing records where evidence exists of regular treatment is a failure to complete the record).  Taken together, Dr. Weingarten and Plaintiff''s attorney efforts to obtain Dr. Saldana's records demonstrate Plaintiff was entitled to rely on the exception pursuant to § 404.935(b)(3)(iv).  Pursuant to the foregoing, Plaintiff's motion for judgment on the pleadings is GRANTED, and the matter is remanded for further proceedings.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion (Dkt. No. 8) is GRANTED; Defendant's Motion (Dkt. No. 10) is DENIED.  The matter is REMANDED for further proceedings consistent with the foregoing, including the issuance of a subpoena pursuant to § 404.950(d) for treatment records from Dr. Saldana's office.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      November 18, 2020
            Buffalo, New York